535 So.2d 923 (1988)
Margaret Johnson LAZARUS, Plaintiff/Appellant,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE CO., et al., Defendants/Appellees.
No. 19905-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
Writ Denied December 2, 1988.
*924 Campbell, Campbell & Johnson by James M. Johnson, Minden, for plaintiff/appellant.
John W. King, Baton Rouge, Blanchard, Walker, O'Quin & Roberts by Lawrence W. Pettiette, Jr., Shreveport, for defendants/appellees.
Before HALL, C.J., and JASPER E. JONES and LINDSAY, JJ.
HALL, Chief Judge.
Plaintiff appeals from a judgment awarding her damages against the driver of one of the vehicles involved in a three vehicle accident and rejecting her demands against the other defendants. The primary issue is whether the State of Louisiana through the Department of Transportation and Development is liable for the defective or negligent design, construction, and maintenance of the portion of the State highway where the accident occurred. A second issue is the liability of the driver of the other vehicle for the injuries sustained by plaintiff and the final issue concerns the adequacy of the amount of damages awarded to the plaintiff.
The plaintiff, Margaret Johnson Lazarus, sustained personal injuries as a result of a three car accident on Hwy. 159 in Webster Parish, Louisiana. One of the defendants, Todd Christopher McCrary, was traveling north on Hwy. 159 just after a strong rain had subsided, while it was lightly raining. After he negotiated a curve approximately two and one-half miles north of Minden, McCrary lost control of his vehicle and proceeded into the path of plaintiff's vehicle which was traveling south. Following just behind the plaintiff's vehicle was a vehicle owned by Wheels Inc., and being operated by Larry Harrell, who was employed by Marathon Oil Company. The right front of the McCrary vehicle collided with the front of the Lazarus vehicle in the south bound lane, knocking it into the ditch on the west side. The Harrell vehicle was also struck by the McCrary vehicle and then it came to rest near the plaintiff's vehicle.
Plaintiff filed an action for damages against McCrary, his insurer Southern Farm Bureau Casualty Insurance, Larry Harrell, Wheels Inc., the State of Louisiana through the Louisiana Department of Transportation and Development, State Farm Mutual Automobile Insurance Company, Chrysler Corporation, and Bill Allen Dodge Inc. Plaintiff amended her petition to include Marathon Oil Company, the employer of Larry Harrell, as a defendant.
Chrysler Corporation and Bill Allen Dodge were dismissed from the suit prior to trial. State Farm, the uninsured motorist carrier for the plaintiff, deposited into the registry of the court the limits of its policy plus court costs totalling $11,321.71. After plaintiff rested her case, Marathon Oil Company, Wheels Inc., and Larry Harrell moved for, and were granted, an involuntary *925 dismissal after the trial court found there was no contact by that vehicle with the plaintiff's vehicle.
The trial court found that plaintiff did not prove by a preponderance of the evidence that there were any defects in the highway causing the accident for which the Department of Transportation and Development would be strictly liable. The trial court found that the cause of the accident was the negligence of Todd McCrary in driving too fast for the weather condition and losing control of his vehicle. The trial court granted judgment in favor of the plaintiff against McCrary and his insurer in the amount of $194,960.42, with the insurer's liability limited to its policy limits of $100,000. Plaintiff's demands against the other defendants were rejected.
The plaintiff appealed specifying three assignments of error:
(1) The lower court committed manifest error in finding the State of Louisiana through the Department of Transportation and Development was not liable;
(2) The lower court committed manifest error in granting the judgment of dismissal in favor of the defendants-appellees, Larry Harrell, Marathon Oil Company, and Wheels, Inc.; and
(3) The lower court committed manifest error in awarding plaintiff an inadequate amount of damages.
We find the trial court was not clearly wrong in its liability determinations and did not abuse its discretion in the award of damages, and affirm the judgment.
I. Liability of the State through the Department of Transportation and Development
McCrary testified that after he had successfully negotiated a curve and was proceeding up a small hill he encountered an unusual amount of water flowing west across the roadway as he traveled north. He maintains his car hydroplaned out of control and into the path of the southbound plaintiff. He testified he was traveling at approximately 45 m.p.h. and that when he lost control of his vehicle he was approximately 75 yards from plaintiff's vehicle.
Plaintiff offered the testimony of Dr. William Owen Hadley, a civil engineer accepted as an expert in highway construction, and numerous other witnesses to establish the liability of the state for negligently designing, constructing, and maintaining that portion of Hwy. 159. Dr. Hadley examined the highway from the curve, up the hill past the point of impact, to the crest of the hill. Dr. Hadley testified that the distance from the place where McCrary indicated to him that he lost control to the point of impact was approximately 700 feet and that it would take a vehicle traveling 45 m.p.h. about 10 seconds to travel that distance. Dr. Hadley found a design defect at the low point of the curve and was of the opinion that the defect could have contributed to McCrary's loss of control of his vehicle. He testified the defect was the result of an inconsistent super elevation or banking of the curve along with "dips" in the northbound lane of travel. He found a portion of the curve contained a limited cross slope and ponded areas which would hold water. He also found the shoulder on the outside of the curve to be from one quarter of an inch to one inch higher than the pavement. Dr. Hadley found that because of the conditions of the curve, "[McCrary] would undergo centrifugal force, hit water and certainly produce conditions for hydroplaning." Dr. Hadley did not inspect the scene of the accident at any time when it had been raining and he did not hold himself out as an accident reconstruction expert, but only testified as to the condition of the highway. The expert conceded that there were no defects in the highway between the area in the curve and the point of impact. He also testified that highways cannot be designed so as to eliminate all water on the road during a rainstorm and the possibility of hydroplaning.
The state offered the testimony of Dr. Ned Walton, a registered professional engineer accepted as an expert in highway design, traffic engineering, human factors engineering, and accident reconstruction. He visited the site three times to determine the overall geometrics of the roadway, general service characteristics, and characteristics *926 of the surrounding environment. He found the road to be a typical rural two-lane, two-way highway which had no defects in the area in question. Dr. Walton testified the radius of the curve was 1,910 feet and that with no super elevation or banking integrated into the curve, the design speed of the curve would be approximately 60 m.p.h. He concluded that from a practical standpoint the change in the super elevation as noted by Dr. Hadley was insignificant. Dr. Walton indicated the "dip" noted by Dr. Hadley would have been a normal flat spot which is present on a roadway in the transitional area where a curve straightens and the elevation changes from super elevated or banked to a normal crown slope to the shoulders.
Dr. Walton and Herbert Arnold conducted independent ball bank tests of the curve to determine the degree of curvature. While the ball bank test is used primarily to measure driver comfort it is also used to determine the need for curve warning signs and advisory speed limit signs on Louisiana roadways. Arnold, a district traffic engineer for the Louisiana Department of Transportation and Development, testified the ball bank test is wholly dependent upon the speed of the vehicle. He testified that a nine degree curvature reading would indicate a point at which a driver becomes uncomfortable and a ten degree reading would indicate a need for an advisory speed plate. At the speed of 60 m.p.h. Arnold obtained a nine degree curvature reading and at 55 m.p.h. he obtained a reading of 6.5. Dr. Walton obtained a reading of 5.0 at 55 m.p.h. Both agreed the curve was properly signed and needed no advisory speed limit sign.
Plaintiff offered the testimony of several area residents who described the conditions of the road in this area. Eddie Bogues confirmed an excess amount of water in the tire path of the roadway at the time of the accident less than 100 yards from the point of impact. He indicated water would collect in this place often and affect his ability to control his own vehicle. He testified that he had pulled several people from the ditch along this stretch of the road over the last few years because they had lost control of their vehicles. None of these incidents had been reported to the authorities. He also testified that water will occasionally run off of the Stone's driveway, which is approximately 427 feet south of the impact area, travel down the hill, and cross the road at the low point of the curve. Two other witnesses testified as to similar conditions on the roadway. A third witness stated he lost control of his vehicle along this section of the highway prior to this accident approximately 100 feet south of the point of impact. Finally, another witness testified that he lost control of his truck, "... right on top of the hill ..." north of the point of impact.
The state offered the testimony of the state trooper who investigated the accident and several engineers to establish certain aspects of the roadway. Trooper Shipp walked the entire area in question and found no defects in the roadway and no water running across it. He arrived at the scene approximately 12 minutes after the accident. He determined the point of impact was four feet left of the center line in the south bound lane and he concluded the McCrary vehicle was in the wrong lane of travel. One engineer testified as to the average daily traffic on Hwy. 159 and another as to the number of accidents along this portion of that highway. Of the three accidents that were reported along this section from 1982 through 1985, two occurred during dry roadway conditions and the third was the accident in question. Dr. Walton stated that three accidents was about average for the amount of traffic on this road. Finally, two engineers testified as to the friction characteristics of this portion of Hwy. 159 as determined by a skid truck.
The testimony of Jeff Richards, a passenger in the Harrell vehicle, was to the effect that the McCrary automobile moved over into the southbound lane at a point where a collision with the Lazarus vehicle was imminent.
The state's expert, Dr. Walton, concluded that the McCrary vehicle did not lose control in the curve as surmised by Dr. Hadley because, if he had, his vehicle would have *927 traveled to the outside of that curve and into the ditch. Dr. Walton found it totally unlikely that McCrary was out of control for 700 feet and that he could arrive at the point of impact at a sufficient speed to be involved in a 100 m.p.h. closing speed collision. Dr. Walton also testified that McCrary would not have hydroplaned in the area further up the hill as indicated by some of the witnesses because the conditions of the road would not allow the accumulation of enough water to eliminate the friction of all of the wheels. Dr. Walton suggested that McCrary lost control of his vehicle between 50 feet and 165 feet south of the point of impact. Dr. Walton opined that McCrary simply was traveling in the wrong lane and was unable to correct his mistake in time to avoid a collision.
The trial court determined the cause of the accident to be the negligence of McCrary in driving too fast under the weather conditions and losing control of his vehicle. The court found the plaintiff did not prove by a preponderance of the evidence that there was any defect for which the Department of Transportation and Development would be strictly liable.
Our review of this record reveals the testimony of plaintiff's witnesses did not establish any particular defect in the roadway which was a cause of the accident. Plaintiff's expert witness indicated a possible defect in the curve, while McCrary said he encountered problems after the curve. It is highly unlikely that McCrary lost control and crossed the center line in the area the expert found defective, and continued out of control for 700 feet to the point of impact. Such is inconsistent with McCrary's own testimony and that of Richards. Testimony by plaintiff's other witnesses indicates some people have encountered problems along this portion of the highway; however, the testimony failed to clearly establish the causes of the prior accidents and their location in relation to the specific point of the accident involved in this case. The state trooper was unable to find any excess amount of water on the roadway minutes after the accident.
The weight of the evidence supports the trial court's conclusion that the accident resulted not from any defect in the highway which presented an unreasonable risk of harm, but from McCrary's failure to maintain control of his vehicle on a wet highway. Liability of the state under either negligence or strict liability theories was not established.
II. Liability of Harrell, Marathon Oil Co., and Wheels, Inc.
The plaintiff testified that after she collided with McCrary her car was struck a second time on the driver's side. She stated the second impact broke her car seat causing the injuries to her right heel. The plaintiff offered the testimony of Oliver James Whipple, Jr. who reconstructed the accident. Although Mr. Whipple had been working for an engineering firm since 1960 and reconstructing accidents since then, he was not an engineer and his college degree was in psychology. Whipple examined the vehicles and the accident scene one month prior to trial. He found damage to the operator's side of the Lazarus vehicle that corresponded with damage to the front passenger side of the Harrell vehicle. He found what he believed to be a bumper guard imprint on the Lazarus vehicle that appeared to have been made by the Harrell vehicle bumper. He concluded the Harrell vehicle did impact the Lazarus vehicle.
The trial court, however, relied upon the eyewitness testimony of Jeff Richards, a passenger in the Harrell vehicle. At the time of the accident Richards was participating in the summer intern program of Marathon Oil Co. He presently is employed by the University of Texas at Austin in the data processing division and the court determined him to be an uninterested party. He testified that he witnessed the collision between the McCrary and the Lazarus vehicles and then saw the McCrary vehicle strike the vehicle in which he was a passenger. He stated their vehicle was thrown towards the ditch and it stopped near the Lazarus vehicle. He stated unequivocally that at no time did their vehicle ever strike the Lazarus vehicle. Richards remained conscious throughout the wreck *928 and was able to exit his vehicle immediately. The only injury he sustained was a bruised rib.
Larry Harrell, the driver of the Marathon vehicle, stated his car never made contact with the Lazarus vehicle and that after the impact with the McCrary vehicle his vehicle was moving slowly until it stopped on the side of the road. Harrell never lost consciousness and sustained only minor injuries. Both Richards and Harrell testified their vehicle was following the Lazarus vehicle at a safe distance, approximately five to six car lengths.
The trial court dismissed Harrell, Marathon Oil Co., and Wheels, Inc. finding there was no contact and that even assuming there was contact, there was no evidence of any negligence on behalf of Harrell. We agree. The testimony of the expert who reconstructed the accident is clearly not in accord with the eyewitness testimony. Harrell and Richards were quite certain there was no contact. The plaintiff admitted she saw nothing but was certain she felt a second collision. Eddie Bogues testified that when he approached the Lazarus vehicle immediately after the wreck Margaret Lazarus was unconscious. Even assuming, as the trial court did, that there was contact, the record contains no evidence that Harrell was negligent in any way. We find the trial court correctly dismissed Harrell, Marathon Oil Co., and Wheels, Inc.
III. Amount of Damages
The trial court awarded the plaintiff $194,960.42 including: general damages of $100,000 for her pain, suffering and emotional distress; property damage to her vehicle; past medical expenses in the amount of $22,120.80; future medical expenses of $7,500; nursing services expenses of $4,500; past lost wages in the amount of $28,337.00; and an equal amount for future lost wages. Appellant argues the awards for future medical expenses, home care nursing services, past and future lost wages, and general damages are inadequate. We disagree.
Mrs. Lazarus sustained severe injuries to her right knee, ankle, and heel. Her knee had an open wound with multiple fractures. Part of her ankle was comminuted or splintered into many fragments. Her heel was fractured and has become permanently enlarged. Her orthopaedic surgeon, Dr. James Zum Brunnen, determined Mrs. Lazarus to have about a 65 percent permanent physical impairment of her lower right extremity and that she will never have a normal gait. He found her recovery in the year following the accident to be remarkable. However, he indicated her progress following that year was not to the extent he would have liked to have seen. He believed she may need more surgery in the future depending on the degree of pain that may develop. His testimony was that at this time she did not need surgery, but that if she lived for another 30 years she would have a 50 percent chance of needing further surgery. This evidence does not establish by a preponderance of the evidence the need for the additional future medical expenses as claimed by the plaintiff.
The past lost wages granted the plaintiff correspond with plaintiff's economist's testimony without the additional value of the undocumented fringe benefits. The future lost wages were based upon the trial court's determination that Mrs. Lazarus will be able to return to the work force, "... within a period from the date of trial no greater than that from the date of her accident to the date of trial." The trial court based this determination on the testimony of Dr. Zum Brunnen who concluded that Mrs. Lazarus could drive and perform sedentary work. He was of the opinion that it would be better for her to get out than to stay at home. Although the videotape deposition of Dr. Richard Galloway, a certified rehabilitation counselor, indicates Mrs. Lazarus is unable to return to any work because of her need to periodically raise her feet, we find the trial court was not clearly wrong in its reliance upon the testimony of plaintiff's own physician.
*929 The awards for general damages and home care nursing services are not inadequate.
IV. Decree
For the reasons assigned, we affirm the judgment of the district court at plaintiff-appellant's cost.